# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

CHABAD LUBAVITCH OF THE BEACHES, INC.,

        Plaintiff,

  v.

INCORPORATED VILLAGE OF ATLANTIC BEACH; MAYOR GEORGE PAPPAS; EDWARD A. SULLIVAN; LINDA L. BAESSLER; ANDREW J. RUBIN; and PATRICIA BEAUMONT,

        Defendants.

---

Civil Action No. 2:22-cv-04141(ARL)(JS)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS
## AND IN OPPOSITION TO PRELIMINARY INJUNCTION

**GREENBERG TRAURIG, LLP**
Attorneys for Defendants,
Village of Atlantic Beach, et al.
James Miskiewicz
900 Stewart Avenue, Fifth Floor
Garden City New York 11530
(516) 629-9607

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................... 1

FACTS ................................................................................................................ 1

LEGAL ARGUMENT ........................................................................................ 4

I.     Plaintiff's First, Fifth and Fourteenth Amendment Claims Should be
Dismissed for Lack of Subject Matter Jurisdiction Under  The *Younger*
Abstention Doctrine ................................................................................ 4

II.    The Court Lacks Subject Matter Jurisdiction Over Individual Defendants
Pursuant to Their Absolute Legislative Immunity .................................. 5

III.   Chabad's RLIUPA Claims Fail to Establish Lack Subject Matter
Jurisdiction ............................................................................................. 7

      a.    Background ................................................................................ 7
      b.    Chabad's RLUIPA Claims for Damages Must be Dismissed
Against All Defendants Acting in Their Official Capacities ..................... 8
      c.    The RLIUPA Claims Against Defendants Pappas, Sullivan,
Baessler, Rubin and Beaumont in Their Personal Capacities Must
Also be Dismissed .................................................................... 8

IV.   Defendant's Complaint Fails to State Claims Under Rule 12(b)(6) ...................... 9

      a.    Free Exercise Clause and Establishment Clause Claims .......................... 10
      b.    Plaintiff's Equal Protection Claim Should be Dismissed ........................ 15
      c.    No Takings Clause Violation Has Occurred ............................................. 15
      d.    RLUIPA Does Not Apply to Eminent Domain Proceedings ................... 16

V.    Preliminary Injunction Should Be Denied ........................................... 18

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page**

Almonte v. City of Long Beach,
  478 F.3d 100 (2d Cir. 2007) .................................................................6, 7

American Legion v. American Humanist Assoc.,
  __ U.S. __, 139 S.Ct. 2067 (2019) ...........................................................10

Arlington Heights v. Metropolitan Housing Corp.,
  429 U.S. 252 (1977) ..................................................................................14

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ....................................................................................9

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) ....................................................................................9

Bery v. City of New York,
  97 F.3d 689 (2d Cir. 1996) ........................................................................19

Bogan v. Scott-Harris,
  523 U.S. 44, 49 (1998) ................................................................................6

Matter of Broome County,
  159 A.D.2d 790 (3d Dep't. 1990) ...............................................................5

Christian v. Town of Riga,
  649 F. Supp. 2d 84 (W.D.N.Y. 2009) .........................................................6

Christiansen v. Omnicom Grp., Inc.,
  852 F.3d 195 (2d Cir. 2017) ........................................................................6

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,
  508 U.S. 520 (1993) ............................................................................10, 11

Church v. Town of Brighton,
  04-CV-6355L (W.D.N.Y. Jan. 12, 2005) ....................................................4

City of Boerne v. Flores,
  521 U.S. 507 (1997) ....................................................................................7

Colvin v. State Univ. Coll. at Farmingdale,
  No. 13–CV–3595(SJF)(ARL), 2014 WL 2863224 (E.D.N.Y. June 19, 2014),
  reconsideration denied, 2015 WL 2213297 (E.D.N.Y. May 8, 2015) ........3

Congregation Adas Yereim v. City of New York,
  673 F. Supp. 2d 94 (E.D.N.Y. 2009) ..............................................16, 17, 18

Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,
  138 F. Supp. 3d 352 (S.D.N.Y. 2015), *rev'd. in part*, 945 F.3d 83 (2d Cir.
  2019) .........................................................................................................13

Matter of Consol. Edison Company of New York,
  143 A.D.2d 1012 (2d Dep't. 1988) ....................................................................12

Cottonwood Christian Center v. Cypress Redevelopment Agency,
  218 F.Supp.2d 1203 (C.D.Cal. 2002) ................................................................17

Diamond "D" Constr. Corp v. McGowan,
  282 F.3d 191 (2d Cir. 2002) .................................................................................4

Didden v. Vil. of Port Chester,
  304 F. Supp. 2d 548 (S.D.N.Y. 2004) ..................................................................4

East Thirteenth Street Cmty. Ass'n v. New York State Urban Dev. Corp.,
  84 N.Y.2d 287, 617 N.Y.S.2d 706 (1994) .........................................................18

Employment Div., Dept. of Human Resources of Oregon v. Smith,
  494 U.S. 872 (1990) .......................................................................................7, 10

Fair Housing in Huntington v. Town of Huntington,
  316 F.3d 357 (2d Cir. 2003) ...............................................................................18

Faith Temple Church v. Town of Brighton,
  405 F. Supp. 2d 250 ............................................................................................18

Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC,
  783 F.3d 395 (2d Cir. 2015) .................................................................................1

Franklin Ave. R.E. Corp. v. Cannella,
  139 A.D.3d 717 (2d Dep't.. 2016) ........................................................................6

Fulton v. City of Philadelphia,
  __ U.S. __, 141 S.Ct. 1868 (2021) .....................................................................11

G. & A. Brooks, Inc. v. Stern,
  770 F.2d 288 (2d Cir. 1985) ...............................................................................19

Grayson v. Schuler,
  666 F.3d 450 (7th Cir. 2012) ................................................................................8

Harris v. Mills,
  572 F.3d 66 (2d Cir. 2009) ...................................................................................9

Hahay v. Town of Ellington Bd. Of Educ.,
  323 F.3d 206 (2d Cir. 2003) .................................................................................6

Hernandez v. Commissioner,
  490 U.S. 680 (1989) ...........................................................................................10

Hurley v. Kincaid.
  285 U.S. 95 (1932) .............................................................................................15

Innovative Health Sys., Inc. v. City of White Plains,
  117 F.3d 37 (2d Cir. 1997), *overruled on other grounds*, Zervos v. Verizon
  New York, Inc., 252 F.3d 163 (2d Cir. 2001) ....................................................13

Matter of Jackson v New York State Urban Dev. Corp.,
  67 N.Y. 2d 400 (1986) .........................................................................................5

Kennedy v. Bremerton School Dist.,
   597 U.S. ___, ___; 2022 WL 2295034 (June 27, 2022) ......................................11

Kohlasch v. New York State Thruway Authority,
   482 F. Supp. 721 (S.D.N.Y. 1980) ........................................................................16

Kommer v Ford Motor Co.,
   2017 WL 3251598 (N.D.N.Y. 2017) .......................................................................9

Kramer v. Time Warner Inc.,
   937 F.2d 767 (2d Cir. 1991) ....................................................................................1

Larson v. Domestic Foreign Commerce Corp.,
   337 U.S. 682 (1949) ..............................................................................................15

LeBlanc-Sternberg v. Fletcher,
   67 F.3d 412 (2d Cir. 1995) ..............................................................................13, 14

Libbey v. Vill. of Atl. Beach,
   982 F. Supp. 2d 185 (E.D.N.Y. 2013) ...................................................................15

Louisiana Power & Light Co. v. City of Thibodaux,
   360 U.S. 25 (1959) ..................................................................................................4

Lyng v. Northwest Indian Cemetery Protective Ass'n.,
   485 U.S. 439 (1988) ..............................................................................................20

Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,
   584 U. S. ——, —— – ——, 138 S.Ct. 1719 (2018) ............................................10

Patrella v. Suffolk,
   18-CV-3722(JS)(AKT)(E.D.N.Y. 2019) ..................................................................9

Port Chester Yacht Club, Inc. v. Iasillo,
   614 F. Supp. 318 (S.D.N.Y. 1985), 322 ................................................................15

Prater v. City of Burnside,
   289 F.3d 417 (6th Cir. 2002) ............................................................................17, 19

Ruckelshaus v. Monsanto Co.,
   467 U.S. 986 (1984) ..............................................................................................15

San Jose Christian Coll. v. City of Morgan Hill,
   360 F.3d 1024 (9th Cir. 2004) ...............................................................................17

Sherbert v. Verner,
   374 U.S. 398 (1963) ...........................................................................................7, 20

Smith v. Allen,
   502 F.3d 1255 (11th Cir. 2007) ...............................................................................8

Sprint Commc'ns, Inc. v. Jacobs,
   ___ U.S. ___ .............................................................................................................4

Sossamon v. Texas,
   563 U.S. 277 (2011) ................................................................................................8

Sossamon v. Lone Star State of Texas,
  560 F.3d 316 (5th Cir. 2009) ................................................................8

State Employees Bargaining Agent Coalition v. Rowland,
  494 F.3d 71 (2d Cir. 2003) ...................................................................4

Tenney v. Brandhove,
  341 U.S. 367 (1951) ..............................................................................6

Time Warner Cable, Inc. v. DIRECTV, Inc.,
  497 F.3d 144 (2d Cir. 2007) .................................................................18

Time Warner Cable of New York City v. Bloomberg L.P.,
  118 F.3d 917 (2d Cir. 1997) .................................................................19

Tsombanidis v. West Haven Fire Dept,
  352 F.3d 565 (2d Cir. 2003) .................................................................14

United Church v. Chicago,
  502 F.3d 616 (7th Cir. 2007) ...............................................................18

Vision Church v. Village of Long Grove,
  468 F.3d 975 (7th Cir. 2006) ...............................................................17

Warburton v. Goord,
  14 F. Supp. 2d 289 (W.D.N.Y. 1998) ....................................................5

Washington v. Gonyea,
  731 F3d 143 (2d Cir. 2013) ...................................................................8

Williams v. Spota,
  15-CV-5468(JS)(ARL) (E.D.N.Y. Apr. 15, 2016) ................................4

Williamson Planning Commn. v. Hamilton Bank,
  473 U.S. 172 (1985) ............................................................................12

Wisconsin v. Yoder,
  406 U.S. 205 (1972) ..............................................................................7

Younger v. Harris,
  401 U.S. 37 (1971) ............................................................................4, 5

Zahra v. Town of Southold,
  48 F.3d 674 (2d Cir. 1995) ...................................................................15

**Statutes**

42 U.S.C. § 2000cc-5 ...............................................................................13

42 U.S.C. § 2000cc-5(4)(A) .....................................................................13

42 U.S.C. § 2000cc(a) ..............................................................................13

42 U.S.C. § 2000cc(a)(1) .........................................................................13

42 U.S.C. § 2000cc(b) ..............................................................................13

N.Y. EM. DOM. PROC. LAW § 201 ...................................................................2, 3

N.Y. EM. DOM. PROC. LAW § 203 ......................................................................2

N.Y. EM. DOM. PROC. LAW § 207 ......................................................................4

N.Y. EM. DOM. PROC. LAW § 207(A) ...................................................................5

N.Y. EM. DOM. PROC. LAW § 303 ......................................................................9

Village Code § 250-108.1 ...................................................................................9

## Other Authorities

N.Y. Const. Art. 1 § 7 ........................................................................................7

Fed. R. Civ. P. 12(b)(1) ...................................................................................1, 3

Fed. R. Civ. P. 12(b)(6) ...........................................................................1, 4, 5, 12

Fed. R. Evid. 201 ..............................................................................................1

, https://data.census.gov/cedsci/profile?g=1600000US3602968 (last visited
     August 20, 2022) ..........................................................................................1

**PRELIMINARY STATEMENT**

The Incorporated Village of Atlantic Beach (the "Village" or "Atlantic Beach"), Mayor George Pappas, Deputy Mayor and Trustee Edward A. Sullivan, and Trustees Linda Baessler, Andrew J. Rubin and Patricia Beaumont (collectively the "Defendants") submit this memorandum in support of their Rule 12(b)(1) and (6) motion to dismiss for lack of subject matter jurisdiction under the Younger doctrine, absolute legislative immunity as to the individual Defendants and for Plaintiff's failure to state a claim upon which relief may be granted as to all causes of action. This memorandum is also submitted in opposition to Plaintiff's motion for declaratory and preliminary injunctive relief.

**FACTS[1]**

Atlantic Beach is located on a barrier island off the South Shore of Long Island in Nassau County, New York. Complaint at ¶¶ 16, 27. The Village is governed by an elected mayor and deputy mayor, who along with three other elected Trustees, serve as voting members of the Village Board of Trustees. Id. ¶¶ 16-18, 42. Village Hall is located at 65 The Plaza, adjacent to other village-owned facilities. Id. ¶¶ 16, 56, Figure 2. According to the 2020 United States Census, the village population was 1,707.[2]

Chabad Lubavitch seeks to provide religious community outreach through the establishment of Chabad Houses consisting of married couples who offer a wide range of religious and social activities for the broader Jewish community. Id. ¶¶ 19, 22-25. Plaintiff Chabad Lubavitch of the Beaches ("Plaintiff" or "Chabad") was founded in or about 2005 and has served

---

[1] Plaintiff omits large portions of relevant facts from its complaint; however, the following are taken from the complaint and "presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC., 783 F.3d 395, 398 (2d Cir. 2015).

[2] U.S. Census Bureau, Atlantic Beach village, https://data.census.gov/cedsci/profile?g=1600000US3602968, (last visited August 20, 2022). The Court may consider, on a motion to dismiss, matters of which judicial notice may be taken under Fed. R. Evid. 201. Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991)(citations omitted).

the communities of Atlantic Beach and neighboring Long Beach and Lido Beach through religious services and educational, cultural and social activities.  Id  ¶¶ 15-16, 28.   There are over 2,000 Chabad emissary families in the United States and thousands more in over 100 countries.  Id. ¶ 15.

In November 2020, Atlantic Beach retained outside counsel to pursue eminent domain proceedings to acquire an un-occupied former bank building, land and parking lot located at 2025 and an adjacent vacant lot at 2035 Park Street to expand the Village's existing recreational facilities and remodel the former bank into a recreational and community center.  Id. ¶ 45; Plaintiff's Exh. 1, pp. 6:9-20; 9:8-11.  Approximately one year later, Chabad purchased 2025 Park Street in a private transaction, intending to use the former bank as a place of religious worship, education and social activities, and recorded the deed for the property with the Nassau County Clerk's Office on November 18, 2021. Id. ¶ 29, 33.

On December 13, 2021, the Village adopted a resolution to commence legal proceedings to acquire 2025 and 2035 Park Street through eminent domain. Id. ¶ 42.  Following public notice, a hearing was conducted at Village Hall on January 10, 2022. Id. ¶ 44.  New York law required the Village to conduct a pre-acquisition public hearing "in order to inform the public [of the proposed public project] and to review the public use to be served by a proposed public project." N.Y. EM. DOM. PROC. LAW ("EDPL") §§  201, 203. See also Compl. ¶ 4; Exh 1 p. 5:9-25. Eminent domain counsel retained by the Village in November 2020 also reported at the hearing that the Village had conducted an environmental impact assessment pursuant to the State Environmental Quality Review Act ("SEQRA"), which concluded the project would have no adverse environmental impacts on the community.  Id. Exh. 1, pp. 9:21-25, 10:2-15. The hearing was conducted on the record with a transcript prepared of all oral statements made at the hearing

as well as all retention of written statements and other documents submitted up to fifteen days after the live-streamed hearing to the Village's official email address. Id. Exh. 1 p. 7:20.

Public opinions at the hearing varied from hailing the project as "wonderful" to assailing it as "horrible." Id. Exh., pp. 11:11, 18:18, 39:7-10, 44:3-23, 45:1-13. However, no one in attendance expressed hostility towards Plaintiff or its religious beliefs and mission. Cf., Complaint at ¶ 41. Only those opposed to the Village's proposal raised religion at all, accusing defendants of having "suspicious" motives in trying to acquire the properties. Compl., ¶ 51-52; Exh 1, p. 49:23

As required by the EDPL § 201, the Village solicited additional public comments by making available an official email address for 15 days after the public hearing in Village Hall. Id. Exh. 1, p. 7: 16-20. Chabad substitutes those post-hearing written submissions solicited by the Village in favor of anonymous comments posted on a closed Facebook page that played no role in the Village's decision to acquire 2025 and 2035 Park Street. Compl. ¶ 63-64.

On June 14, 2022, acting pursuant to the EDPL, the Village filed a verified petition to acquire 2025 Park Street, as well as 2035 Park Street, in New York State Supreme Court in Nassau County. See Compl. At ¶ 65, 67; In the Matter of the Petition of the Village of Atlantic Beach, Index No. 607774/2022 (N.Y. Sup. Ct., Nassau Co. (July 19, 2022). Chabad filed an answer on July 7, 2022, challenging the Village's petition and then moved in New York State Supreme Court for an order to stay the state proceedings. *See* Defendants' Exhibit 1.[3]

---

[3] In a Rule 12(b)(1) motion, a court may take judicial notice of, though not for the truth of the matters they assert, documents in the public record, which includes records and reports of public bodies. Colvin v. State Univ. Coll. at Farmingdale, No. 13–CV–3595(SJF)(ARL), 2014 WL 2863224, at *16 (E.D.N.Y. June 19, 2014), reconsideration denied, 2015 WL 2213297 (E.D.N.Y. May 8, 2015).

## LEGAL ARGUMENT

I.    **Plaintiff's First, Fifth and Fourteenth Amendment Claims
      Should be Dismissed for Lack of Subject Matter Jurisdiction Under
      The *Younger* Abstention Doctrine [4]**

In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court established the principle that federal courts generally should "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." <u>Diamond "D" Constr. Corp v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002).

As this Court noted in <u>Williams v. Spota</u>, 15-CV-5468(JS)(ARL) (E.D.N.Y. Apr. 15, 2016), the Supreme Court has since held in <u>Sprint Commc'ns, Inc. v. Jacobs</u>, ___ U.S. ___, ___; 134 S. Ct. 584, 591-92 (2013), that the <u>Younger</u> doctrine applies only to three classes of state court proceedings: 1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." <u>Sprint</u>, 134 S. Ct. at 588 (internal quotation marks and citations omitted); see <u>id.</u> at 591 ("We have not applied Younger outside these three 'exceptional' categories, and today hold . . . that they define Younger's scope.").

Here, Plaintiff seeks federal intervention in an on-going civil proceeding in New York State Supreme Court in Nassau County. See Compl. ¶¶ 8-11. District Courts in New York have already determined that "condemnation proceeding[s] implicate[] important state interests" and "New York eminent domain proceedings always satisfy the first two prongs of Younger." <u>Didden v. Vil. of Port Chester</u>, 304 F. Supp. 2d 548, 564 (S.D.N.Y. 2004). See also, <u>Louisiana Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25, 28 (1959) (eminent domain is "intimately involved with

---

[4] At least one district court in this Circuit has concluded that RLIUPA claims are not reviewable under New York's Eminent Domain Procedures Law § 207 and thus not subject to Younger abstention. <u>Church v. Town of Brighton,</u> 04-CV-6355L (W.D.N.Y. Jan. 12, 2005). Accordingly, Defendants' limit the Younger grounds for dismissal to Plaintiff's Section 1983 claims.

sovereign prerogative"). A federal district court lacks subject matter jurisdiction to review a constitutional challenge to claims that can be litigated in a State Court condemnation proceeding. See Warburton v. Goord, 14 F. Supp. 2d 289, 296 (W.D.N.Y. 1998).

EDPL 207(A) permits Plaintiff's to "seek judicial review * * * by the appellate division" in a summary proceeding to review "whether the proceeding was constitutional or within the [Village's] statutory jurisdiction; whether the agency made its determination and findings in accordance with the procedures set forth in article 2; and whether 'a public use, benefit or purpose will be served by the proposed acquisition'." Matter of Jackson v New York State Urban Dev. Corp., 67 N.Y. 2d 400 (1986). See also, Matter of Broome County, 159 A.D.2d 790, 791 (3d Dep't. 1990)(after the district court for the Northern District of New York remanded the proceeding to State Court, the Appellate Division found that jurisdiction to resolve all issues surrounding the county's condemnation, "constitutional questions" included, rests exclusively in the appropriate Appellate Division).

Having answered the Village's petition in State Court and having stayed the matter despite the availability to obtain relief of all constitutional claims raised here in State court, this Court should exercise *Younger* abstention and dismiss for lack of subject matter jurisdiction rather than interfere with the pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Younger, 491 U.S., at 368.

## II.     The Court Lacks Subject Matter Jurisdiction Over Individual Defendants Pursuant to Their Absolute Legislative Immunity

In further analyzing the Complaint's failure to establish subject matter jurisdiction under Rule 12(b)(1), the Court should also dismiss Chabad's Section 1983 claims against individual defendants Pappas, Sullivan, Baessler, Rubin and Beaumont.

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998). "[T]he time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace." Id. at 52. See also Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003). In Tenney v. Brandhove, 341 U.S. 367 (1951), the Supreme Court established that motive is not an element to be considered when determining absolute legislative immunity. Id. at 377.

Legislative immunity bars suits for damages, injunctions and declaratory relief against legislators. State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 81-88 (2d Cir. 2007); Christian v. Town of Riga, 649 F. Supp. 2d 84 (W.D.N.Y. 2009). See also 24 Franklin Ave. R.E. Corp. v. Cannella, 139 A.D.3d 717 (2d Dep't.. 2016).

Under the Supreme Court's functional test of absolute legislative immunity, whether immunity attaches turns not on the official's identity or even on the official's motive or intent, but on the nature of the act in question. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003) (citing Bogan, 523 U.S. at 54) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."). Legislative immunity shields an official from liability if the act in question was undertaken "in the sphere of legitimate legislative activity." See Bogan, 523 U.S. at 54 (quoting Tenney at 376). In Almonte v. City of Long Beach, 478 F.3d 100, (2d Cir. 2007), the Second Circuit held "that legislative immunity is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process, including the discussions held and alliances struck regarding a legislative matter in anticipation of a formal vote." Id. at 107.

Based on the foregoing authorities, the Section 1983 claims against defendants Pappas, Sullivan, Baessler, Rubin and Beaumont should be dismissed under Rule 12(b)(1).

## III.    Chabad's RLIUPA Claims Fail to Establish Lack Subject Matter Jurisdiction

### a.    Background

Exposing the Complaint's flawed RLIUPA claims under Rule 12(b)(1) warrants a brief foray into federal religious free exercise law beginning with Sherbert v. Verner, 374 U.S. 398, 402-03 (1963), where the Supreme Court held that governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest, i.e., strict scrutiny. See also Wisconsin v. Yoder, 406 U.S. 205 (1972).   In Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), the Court limited the applicability of the Sherbert test and held that free exercise challenges to neutral, generally applicable laws are subject only to rational basis review. See Smith, 494 U.S. at 888-90 (1990).

In response to Smith, Congress enacted the Religious Freedom Restoration Act, commonly known as RFRA. Pub. L. 103-141, 107 Stat. 1488 (1993) (codified at 42 U.S.C. §§ 2000bb to bb-4) "to restore the compelling interest test as set forth in" Sherbert and Yoder.  However, in City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that Congress unconstitutionally exceeded its authority to apply RFRA to the state under the Fourteenth Amendment. Id. at 517-520.

In 2000, Congress responded again with the enactment of RLUIPA by providing that "[n]o government shall impose a substantial burden on the religious exercise," 42 U.S.C. § 2000cc–1(a), "in a program or activity that receives Federal financial assistance," id. § 2000cc–1(b)(1), or in a way that affects or would affect "commerce with foreign nations, among the several States, or with Indian tribes," id. § 2000cc–1(b)(2). The term "government" includes, inter alia, "a municipality"

such as the Village, and "any other person acting under color of State law[.]" 42 U.S.C. § 2000cc–5(4)(A).

### b. Chabad's RLUIPA Claims for Damages Must be Dismissed Against All Defendants Acting in Their Official Capacities

In <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011), the Supreme Court held that sovereign immunity bars the availability of money damages as a remedy against states and state actors in their official capacities under RLUIPA. "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." <u>Id</u>. at 292. Chabad therefore cannot maintain its RLUIPA claims for money damages against the Village or individual defendants Pappas, Sullivan, Baessler, Rubin and Beaumont in their official capacities.

### c. The RLIUPA Claims Against Defendants Pappas, Sullivan, Baessler, Rubin and Beaumont in Their Personal Capacities Must Also be Dismissed

Because RLIUPA was enacted pursuant to Congress' spending power, *see* 42 U.S.C. § 2000cc–1(b)(1), which allows the imposition of conditions, such as individual liability, only on those parties actually receiving the state funds, the Second Circuit and every other circuit to have decided the issue has held that "RLUIPA does not provide a cause of action against state officials in their individual capacities. . .." <u>Washington v. Gonyea</u>, 731 F.3d 143, 145-46 (2d Cir. 2013) (citing <u>Nelson v. Miller</u>, 570 F.3d 868, 886–89 (7th Cir. 2009); <u>Rendelman v. Rouse</u>, 569 F.3d 182, 188–89 (4th Cir. 2009); <u>Sossamon v. Lone Star State of Texas</u>, 560 F.3d 316, 328–29 (5th Cir. 2009), *aff'd on other grounds by* <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011); <u>Smith v. Allen</u>, 502 F.3d 1255, 1271–75 (11th Cir. 2007), *abrogated on other grounds by* <u>Sossamon</u>, supra; <u>Grayson v. Schuler</u>, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity.")).

Therefore, insofar as the Complaint's RLIUPA claims seek damages, declaratory, or injunctive relief against defendants Pappas, Sullivan, Baessler, Rubin and Beaumont in their personal capacities, the Complaint must also be denied with prejudice as to those individuals.

## IV.     Defendant's Complaint Fails to State Claims Under Rule 12(b)(6)

"To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Patrella v. Suffolk, 18-CV-3722(JS)(AKT)(E.D.N.Y. 2019)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)).   Under Rule 12(b)(6),  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, supra.).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555(citations omitted). "Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal." Kommer v Ford Motor Co., 2017 WL 3251598, *2  (N.D.N.Y. 2017).

District courts apply a "plausibility standard," which is guided by "[t]wo working principles." Iqbal, 556 U.S. at 678; accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, district courts consider whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572

F.3d at 72. The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff's claims will prevail. Christiansen v. Omnicom Grp., Inc., 852 F.3d 195, 201 (2d Cir. 2017).

a.    **Free Exercise Clause and Establishment Clause Claims**

Plaintiff's Free Exercise and Establishment Clause claims allege that the Village used eminent domain to acquire 2025 and 2035 Park Street as a pretext to conceal a plan to deprive Chabad of its constitutional rights due to hostility towards its religious beliefs and practices. Compl. ¶ 41, 78, 90 (quoting American Legion v. American Humanist Assoc., __ U.S. __, 139 S.Ct. 2067, 2074 (2019)).

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amdt. 1. Thus, a government entity may not place "a substantial burden on the observation of a central religious belief or practice and, if so, . . . a compelling governmental interest [must] justif[y] the burden." Hernandez v. Commissioner, 490 U.S. 680, 699 (1989). In Employment Div., Dept. of Human Resources of Oregon v. Smith, supra, the Supreme Court held, however, that the Free Exercise Clause does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. Id. at 878-882. Rather, Smith held that laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable. Id. at 878–882. Although a government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature, Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n, 584 U. S. ——, ——, 138 S.Ct. 1719, 1730–1732 (2018); Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993), Chabad's Complaint points to no facts that, accepted as true at this stage, plausibly demonstrate that the Village has violated that neutrality standard.

The power of the Village to take private property for public use upon the payment of just compensation is not at all based upon zoning laws as suggested by Plaintiff but flows from the basic powers of the sovereign recognized by the Fifth Amendment of the United States Constitution and Article 1, Section 7 of the New York State Constitution, extended to towns and other of the State's political subdivisions by the EDPL. Contrary to Plaintiff's conclusory allegations, the neutral and generally applicable EDPL is the only law relied upon by the Defendants, whose use Chabad would here enjoin.

Plaintiff's conclusory statements that the Village used eminent domain as pretext include: (a) the allegedly "suspicious" timing of the condemnation proceedings, (b) availability of other sites for a Village community center; and (c) that the Village failed to make an offer to buy the property and that EDPL should only be used as a "last resort." According to Plaintiff's then, this matter should proceed beyond pleadings because the Village's actions are not justified by a compelling state interest and tailored narrowly to advance such an interest. Compl., ¶ 73 (quoting Lukumi Babalu, supra.

Plaintiff is wrong. In Lukumi, a church leased property for use in practicing Santeria, a religion that includes animal sacrifice as one of its principal forms of devotion. Id. The city council immediately held an emergency public session and voted to expressly prohibit such practices. Id. Given the uncontroverted record that the prohibition was specifically aimed at the church, the Supreme Court held that such land use action was not neutral nor in furtherance of a compelling interest. Id. Similar cases relied upon by Plaintiff also involved zoning or other land use or seemingly neutral policies aimed expressly as a means of interfering with free exercise of religious belief and practices. Fulton v. City of Philadelphia, __ U.S. __, 141 S.Ct. 1868, 1877 (2021)(overturning the city's refusal to refer foster children for placement to a Catholic foster care

agency due to its opposition to placement of children with same-sex couples); Kennedy v. Bremerton School Dist., 597 U.S. ___, ___; 2022 WL 2295034 *17-18 (June 27, 2022)("By its own admission, the [School] District sought to restrict Mr. Kennedy's actions at least in part because of their religious character.").

No analogous facts are pled here. The Complaint pleads no facts demonstrating hostility toward Chabad. American Legion v. American Humanist Assoc., __ U.S. __, __, 139 S.Ct. 2067, 2074 (2019). Accusations that the Village sought to acquire the two properties only after Chabad purchased 2025 Park Street, and therefore must be found "suspicious" or "pretextual," are contradicted by the transcript of the Village's January 10, 2022, public hearing. Id. ¶ 45; Plaintiff's Exh. 1, pp. 6:9-20; 9:8-11.

Reference to the Village Code § 250-108.1 requiring a special permit applicable to the religious and educational use of buildings is irrelevant. Plaintiff's reliance on the ordinance is merely a "threadbare" accusation that the Defendants are pre-disposed to discriminate against Chabad.

Similarly unsupportive is Plaintiff's reference to EDPL §303, which does not require a Village to make a pre-vesting offer before acquiring title to the subject property or use eminent domain only as a "last resort." EDPL 303 simply requires the condemnor, "[w]herever practicable," to make an offer of compensation prior to actually acquiring title to the property. "The Fifth Amendment [does not] require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." Williamson Planning Commn. v Hamilton Bank, 473 U.S. 172, 194 (1985); accord Matter of Consol. Edison Company of New York, 143 A.D.2d 1012 (2d Dep't. 1988).

Finally, because no alleged facts support a claim against the Defendants for religious discrimination under the First Amendment, Plaintiff tries to tarnish the Village and its elected officials with such unlawful intent by quoting four anonymous, excerpted comments posted on a Facebook chatroom not used in connection with the Village's eminent domain proceedings. Compl. ¶ 63. Plaintiff argues, "even if not a part of the decisionmaking body, [the Facebook comments] are relevant in assessing discriminatory purpose" behind the Village's decision to acquire the property through eminent domain. Reply Brief, p. 6 (citing Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d 352 (S.D.N.Y. 2015), *rev'd. in part*, 945 F.3d 83 (2d Cir. 2019).

Plantiff points to no historical hostility among community residents against Chabad that can be said to have motivated the Defendants to use eminent domain to seize 2025 and 2035 Park Street. Cf. Tsombanidis, supra; Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 49 (2d Cir. 1997)(" a decision made in the context of strong, discriminatory opposition becomes tainted with discriminatory intent even if the decisionmakers personally have no strong views on the matter), *overruled on other grounds*, Zervos v. Verizon New York, Inc., 252 F.3d 163, 171 n. 7 (2d Cir. 2001); see also LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995)("Discriminatory intent may [be demonstrated] . . . by showing that animus against the protected group was a significant factor in the position taken by . . . those to whom the decision-makers were knowingly responsive." (internal quotation marks omitted)). On remand, the district court in Tartikov found substantial evidence of community hostility towards a religious group and that the officials took public comments into account. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d 352, 410 n. 26 (S.D.N.Y. 2015).

In contrast, Plaintiff points to no animus against Chabad at the public hearing. As illustrated in Plaintiff's Exhibit 1 attached to the Complaint, public comments at the January 10, 2022, hearing were both for and against the Village's acquisition of the properties through eminent domain and creation of a community center. Therefore, Plaintiff fails to show that such hostility was a factor at all, let alone a significant one, leading to the Defendants' decision to acquire the properties through eminent domain. Cf. LeBlanc-Sternberg, supra. Beyond Chabad's conclusory allegations that the Village Defendants adopted a "plan" to drive Chabad out of Atlantic Beach by using eminent domain, (Compl. ¶¶ 41-42), the anonymous Facebook comments provide no basis for a cause of action because Plaintiff can show no facts demonstrating that the Defendants were "knowingly responsive" to such views. LeBlanc-Sternberg, supra.

To be sure, "[d]etermining whether invidious discriminatory purpose was a motivating factor [behind government action] demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266-67 (1977). Factors that the Court may consider in evaluating a claim of intentional discrimination include: (1) the discriminatory impact of the governmental decision; (2) the decision's historical background; (3) the specific sequence of events leading up to the challenged decision; (4) departures from the normal procedural sequences; and (5) departures from normal substantive criteria. Tsombanidis v. West Haven Fire Dept, 352 F.3d 565, 579-580 (2d Cir. 2003).

Here, the decision to acquire 2025 Park Street has had no discriminatory impact on Chabad beyond the incidental burden that the Supreme Court has held is permissible so long as action is taken under neutral and generally applicable procedures such as those provided by the EDPL, which Plaintiff does not contest. Smith, 494 U.S. at 878–882. No historical religious animus by the community nor Defendants support a finding of discrimination. As noted above, while Plaintiff

makes much about the sequence of events leading up to the decision to commence eminent domain, it does so only by ignoring the uncontroverted record in its own pleadings that Atlantic Beach had sought to pursue condemnation proceedings against both properties approximately a year before Chabad purchased one of the two properties. Finally, there have been no departures from normal procedures or substantive criteria in the Village's actions. <u>Tsombanidis</u>, <u>supra</u>.

### b. Plaintiff's Equal Protection Claim Should be Dismissed

As this Court has stated in an earlier Equal Protection selective enforcement claim brought by the owners of 2035 Park Street:

> In order to adequately allege a selective enforcement claim, a plaintiff must allege: (1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

<u>Libbey v. Vill. of Atl. Beach,</u> 982 F. Supp. 2d 185, 210 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). See also <u>Zahra v. Town of Southold,</u> 48 F.3d 674, 683 (2d Cir. 1995).

Plaintiff has not pleaded any facts sufficient to proceed under a selective enforcement theory. <u>See</u> Compl., ¶ 99. Chabad has not identified any similarly situated persons who were treated differently by Defendants. In fact, the only other similarly situated party, the owners of 2035 Park Street, are being treated exactly the same as Chabad. Accordingly, Plaintiff fails to state a cause of action under the Equal Protection Clause.[5]

### c. No Takings Clause Violation Has Occurred

Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, as it is here, when a suit for compensation can be brought subsequent

---

[5] Although the insufficiency of fact pled to support disparate treatment is sufficient for dismissal under Rule 12(b)(6), the remaining allegation that the Village failed to consider condemnation of other properties, fails as well to establish disparate treatment as Defendants submit, parcels of land are not protected classes that may be described as "similarly situated," nor does such an allegation establish unequal treatment based on impermissible consideration. Compl. ¶ 98,99.

to the taking. <u>Larson v. Domestic Foreign Commerce Corp.,</u> 337 U.S. 682, 697, n. 18 (1949). The

Fifth Amendment does not require that compensation precede the taking. <u>Hurley v. Kincaid</u> 285

U.S. 95, 104 (1932). <u>Ruckelshaus v. Monsanto Co.,</u> 467 U.S. 986, 1016 (1984). The EDPL

provides such a mechanism, assuring just compensation to the property owner. <u>Port Chester Yacht

Club, Inc. v. Iasillo,</u> 614 F. Supp. 318, 322 (S.D.N.Y. 1985), 322; <u>Kohlasch v. New York State

Thruway Authority,</u> 482 F. Supp. 721, 723 (S.D.N.Y. 1980). The complaint fails to state anywhere

that the Village has taken Chabad's property without due process of law. Accordingly, Plaintiff's

Taking Clause claim is also without merit and should be dismissed.

### d. RLUIPA Does Not Apply to Eminent Domain Proceedings

Under RLUIPA, a person may bring a suit against a "government" which includes, inter

alia , municipalities, their instrumentalities and officers, and persons acting under color of state

law. 42 U.S.C. § 2000cc-5(4)(A), when the government,

> impose[s] or implement[s] a land use regulation in a manner that imposes a
> substantial burden on the religious exercise of a person, including a religious
> assembly or institution, unless the government demonstrates that imposition of the
> burden on that person, assembly, or institution-
>
> > **(A)** is in furtherance of a compelling governmental interest; and
> >
> > **(B)** is the least restrictive means of furthering that compelling governmental
> > interest.

<u>Id</u>. § 2000cc(a).

RLUIPA also permits a cause of action when a government, "treats a religious assembly

or institution on less than equal terms with a nonreligious assembly or institution." <u>Id</u>. § 2000cc(b).

RLUIPA does not apply to eminent domain proceedings. As Judge Vitaliano explained in

<u>Congregation Adas Yereim v. City of New York,</u> 673 F. Supp. 2d 94 (E.D.N.Y. 2009):

The plain language of RLUIPA makes clear that the statute operates only when a state or local government attempts to "impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." 42 U.S.C. § 2000cc(a)(1); see Westchester Day Sch. v. Village of Mamaroneck, 504 F.3d 338, 347 (2d Cir. 2007). A "land use regulation", in turn, is defined as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." 42 U.S.C. § 2000cc-5. Accordingly, the government implements a "land use regulation" within the meaning of RLUIPA "only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." <u>Prater v. City of Burnside</u>, 289 F.3d 417, 434 (6th Cir. 2002); <u>Vision Church v. Village of Long Grove</u>, 468 F.3d 975, 998 (7th Cir. 2006); <u>San Jose Christian Coll. v. City of Morgan Hill</u>, 360 F.3d 1024, 1036 (9th Cir. 2004).

<u>Id.</u>

Chabad contends that <u>Adas Yereim</u> is inapplicable because eminent domain "is regularly used as a 'method of implementation' for zoning and land use plan." Plaintiff's Reply Brief, p. 8 (*citing, inter alia*, <u>Cottonwood Christian Center v. Cypress Redevelopment Agency</u>, 218 F.Supp.2d 1203 (C.D.Cal. 2002)).

In <u>Cottonwood</u>, the plaintiff sought to build a church on parcel of land that it owned. The City of Cypress planned to use that land for commercial retail space and initiated eminent domain proceedings. The plaintiff brought an action for a preliminary injunction after the City denied it the necessary land use permit it needed to begin constructing its place of worship. The district court found that the City's refusal to grant Cottonwood's application for a conditional use permit was a land use regulation subject to RLUIPA. In a footnote, the court commented that "[e]ven if [it] were only considering the condemnation proceedings, they would fall under RLUIPA's land use regulation." <u>Cottonwood</u>, 218 F.Supp.2d at 1222 n. 9.

In Adas Yereim, the district court rejected the identical argument made by Plaintiff here.

In New York, municipalities are authorized by statute to enact zoning laws which, generally, "regulate and limit the height, bulk and location of buildings," trades and industries in order "to promote the public health, safety and general welfare." Such laws are materially different from eminent domain procedures, which allow local

governments to assume full ownership of private property for public use, and which derive directly from the New York Constitution. N.Y. Const. Art. I § 7, Art. IX § 1(e). Had Congress wished to bring the distinct, longstanding, well-known, and important governmental power of eminent domain within the ambit of RLUIPA, it surely could have said so. That it did not is compelling.

Adas Yereim, at 106 (citing Faith Temple Church v. Town of Brighton, 405 F. Supp. 2d 250, 254 (observing that zoning and eminent domain are "two distinct concepts, both of which involve land, but in very different ways"); United Church v. Chicago, 502 F.3d 616, 640 (7th Cir. 2007) ("[g]iven the importance of eminent domain as a governmental power affecting land use, we think that if Congress had wanted to include [it] within RLUIPA, it would have said something. . . . Congress did not mention eminent domain . . . in RLUIPA's definition of a land use regulation, which is enough for us to consider it excluded"); East Thirteenth Street Cmty. Ass'n v. New York State Urban Dev. Corp., 84 N.Y.2d 287, 296, 617 N.Y.S.2d 706 (1994) (recognizing "notable differences between zoning statutes and eminent domain proceedings").

Given the weight of authority regarding RLIUPA's inapplicability to eminent domain proceedings, Defendants submit that Plaintiff's claims based on that statute must also be dismissed.

## V.    Preliminary Injunction Should Be Denied

The Defendants re-assert and incorporate here arguments set forth in their Memorandum in Opposition to Plaintiff's Motion Preliminary Injunction filed July 20, 2022, except as supplemented and modified briefly here. ECF Dkt. No. ___.

Ordinarily, a party seeking a preliminary injunction must establish (1) a likelihood of irreparable harm if the requested relief is denied, and (2) either (a) a likelihood of success on the merits or (b) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 152-53 (2d Cir. 2007). However, when a plaintiff seeks an

injunction staying governmental action "taken in the public interest pursuant to a statutory or regulatory scheme," an injunction will issue only if the plaintiff can show irreparable injury and meet "the more rigorous likelihood-of-success standard." Fair Housing in Huntington v. Town of Huntington, 316 F.3d 357 (2d Cir. 2003) (citing Bery v. City of New York, 97 F.3d 689, 694 (2d Cir. 1996). Further, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." Time Warner Cable of New York City v. Bloomberg L.P., 118 F.3d 917, 929 (2d Cir. 1997).

For the reasons set forth in Defendants' motion to dismiss, Plaintiff cannot meet the more rigorous likelihood of success standard required to issue preliminary injunction. Chabad's claim for injunctive relief may be summarized as follows: if the Village is allowed to exercise its sovereign powers to take 2025 Park Street for public use pursuant to the EDPL, a law that is obviously one of general application and expressly authorized by both the Federal and State Constitutions, Plaintiffs Free Exercise and RLUIPA rights will be somehow violated. However, the fact that the Chabad may not be able to develop this property puts it in no different position than any third party that might wish to acquire and develop it, say for a shopping center, apartment complex or for some other use instead of a Chabad House. The Village has done nothing to limit the Chabad's religious rights, to force adherents to refrain from religiously motivated conduct, to inhibit or constrain conduct or expression that manifests central tenants of the Chabad's religious beliefs, or to compel Chabad to engage in conduct or expression that is contrary to those beliefs. Condemnation does not constitute a prior restraint or other improper limitation upon the Chabad's First Amendment activities. See G. & A. Brooks, Inc. v. Stern, 770 F.2d 288, 296 (2d Cir. 1985)

(condemnation of Times Square properties advanced a public purpose, was not directed or targeted at suppression of speech and only incidentally affected rights of sexually-oriented business owned by plaintiff); Prater v. City of Burnside, 289 F.3d at 427-28 (extension of public road that divided church's contiguous lots and prevented its expansion not a violation of First Amendment's Free Exercise or Establishment Clauses or contrary to the provisions of RLUIPA). "The Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." Lyng v. Northwest Indian Cemetery Protective Ass'n., 485 U.S. 439, 451 (1988), (quoting Sherbert, supra). "The Free Exercise Clause, therefore, does not entitle a religious organization to special benefits." Prater, 289 F.3d at 418. Here, Chabad seeks not to protect its rights to the Free Exercise of its religious beliefs but to obtain a benefit which no secular entity would be entitled.

## CONCLUSION

The Court should dismiss under the Younger doctrine and for failure to state a claim for relief or, alternatively if the action is to continue, must deny Plaintiff request for preliminary injunctive relief, as Plaintiff faces no threat of irreparable harm and is unable to carry its burden of showing a likelihood that the Defendants imposed or implemented a land use regulation (i.e., a zoning law) to limit its exercise of religion.

Dated: August 24, 2022

Respectfully submitted,

/S/ James Miskiewicz
GREENBERG TRAURIG, LLP
Attorneys for Defendants
900 Stewart Avenue, Fifth Floor
Garden City New York 11530
(516) 629-9607